# New Orleans, Mobile and Texas R. R. Co. *v.* Southern and Atlantic Telegraph Co.

*Proceeding to condemn Right of Way of Railroad Company, for use of Telegraph Company.*

1. *Public use; what constitutes, within the law of eminent domain.*—Lines for the transmission of telegraphic messages may constitute a work of "public use," under the laws governing the right of *eminent domain.*

2. *Eminent domain ; what owner in possession cannot set up, to prevent exercise of right of.*—In proceedings, under the statutes of this State, by a telegraph company to obtain the right to construct lines over the right of way of a railroad company, the railroad corporation can not complain that another telegraph company, to whom it had granted the exclusive privilege over its right of way, was not made a party.

3. *Same.*—Nor is it an available objection on the part of the railroad company, that the petition initiating the proceedings does not show that there were owners in fee—apart from the railroad corporation—of the lands over which the easement is sought.

4. *Same; what can not defeat*—A contract ceding to a telegraphic company the exclusive right of operating and maintaining its lines over the right of way of a railroad company, even if otherwise valid, cannot debar the State, in the exercise of the right of eminent domain, from authorizing the establishment of another telegraph line over the same right of way.

5. *Nominal damages, when failure to give, not ground of reversal.*—Where the statute requires costs to be paid by the party initiating the pro-

[N. O. M. & T. R. R. Co. *v.* S. & A. T. Co.]

ceedings and they are adjudged accordingly, a defendant whose property is condemned to a public use cannot claim a reversal, because the jury, returning a verdict that no actual damage was sustained, failed to award merely nominal damages in his favor.

*Probate court; jurisdiction of.*—Neither § 9 of Art. VI. of the constitution, nor other portions of that instrument, inhibit the legislature from conferring upon the probate court jurisdiction of proceedings to condemn private property for "public use."

APPEAL from Probate Court of Mobile.

This was a proceeding by the Southern and Atlantic Telegraph Company, to condemn or subject to its use, for the purpose of constructing, maintaining and operating its lines of telegraph, the right of way, bridges and trestles of the New Orleans, Mobile and Texas Railroad Company, in such a manner as not to obstruct or hinder the use of the railroad.

The petition of the telegraph company, which was addressed to the judge of probate, was sworn to, and recites that the telegraph company is a corporation duly chartered and organized under the laws of the State of New York, and had duly accepted the provisions of an act of Congress "to aid in the construction of telegraphs and to secure the government the use of the same for postal, military and other purposes," approved July 24, 1866; that it entered the State with its lines, and is now extending into and operating its line from a point near where the Mobile and Girard Railroad crosses the Chattahoochee river to the city of Mobile, and proposes under the laws of Alabama to further extend its lines into said State, and the lines separating the States of Alabama and Mississippi, on the line of the appellant's road.

The petition then describes the appellant corporation and the nature of the franchise and right of way in this State, which is sought to be subjected to the use of the telegraph company, showing that the appellant has a finished road, commencing in the city and county of Mobile and extending within the State of Alabama twenty-nine miles towards the city of New Orleans; that its principal office is in New York city, and that Samuel D. Robinson is the managing agent of the corporation within this State, and residing in Mobile. After averring that the appellant corporation is a post-road, and refuses to contract or to enter into any negotiations with the telegraph company, about the right to construct its telegraph lines on and along the railroad, the petitioner prays that jurisdiction be taken; that Robinson be served with notice, and that the same be posted, &c.; and "that all needful orders be issued pursuant to the statute,

[N. O. M. & T. R. R. Co. *v.* S. & A. T. Co.]

that the use, easement, rights and other privileges herein claimed be condemned for the use of petitioner."

The court, in an order reciting the contents of the petition, appointed a day for the hearing, and ordered that a monition and notice of the filing of the petition, and of the purport thereof in general terms, be issued and executed by the sheriff by posting a copy in some conspicuous place upon the railroad and right of way of appellant within the county of Mobile, ten days before the day set for the hearing, and a copy of the notice and monition be served personally upon the managing agent of the appellant, and the sheriff was also directed to summon eighteen freeholders, out of whom to empannel a jury to assess the damage.

The appellant filed a demurrer and an answer. The grounds of demurrer assigned were : 1st, The petition shows that defendant had only a right of way over the lands on which the railroad is constructed; 2d, It does not allege whether defendant was the owner in fee of said lands or not ; 3d, The owners of the fee in said lands were not made parties, nor is it stated who they are, nor that they are unknown; 4th, It does not show that the petitioner has been unable to agree with the owner or person or corporation authorized to sell or control the lands or interest therein ; 5th, It does not give a particular description of the parcels of land sought to be condemned.

The answer denies the jurisdiction of the court to grant the relief prayed in the petition, and demands that strict proof be made of the facts stated therein. It further states that under a contract made with the Western Union Telegraph Company, that company had built and was then operating a telegraph line along the very right of way now sought to be condemned ; that this was done under a contract which was to remain of force until the year 1895, one of the terms of which was as follows: "Sixth, The said railroad company agrees to grant the exclusive right of way on and along the line of its road between Mobile and New Orleans, for the construction and use of telegraph lines for commercial or public uses and business, and will not allow any other company or individual to build or operate a line of telegraph on or along its road, nor transport men or material for such company or individuals at less than the usual local rates, not except so far as it may be legally bound, stop its trains or distribute material for such party or their employees, at other than regular stations." The answer insists that the telegraph company is vitally interested in the matter of the petition, and its rights so connected with defend-

[N. O. M. & T. R. R. Co. *v.* S. & A. T. Co.]

ants, that it is an indispensable party, and that no further steps ought to be taken until it is made a defendant. It is also urged in the answer that unless the Western Union Company is decreed to have the exclusive right of telegraph privileges along said route, it will abandon its contract with the railroad, which is highly advantageous to it, whereby the railroad company will suffer great damages, and insists that the railroad company is entitled to full compensation on this as well as on other accounts, if relief is granted under the petition.

The petitioner "by way of exception or demurrer" to the answer, denied the making of the contract with the Western Union Telegraph Company, and alleged that if made as stated, the contract is illegal and void as against public policy, and creates a monopoly, and further, that the answer showed no right in the Western Union Telegraph Company which would be impaired or affected by granting the relief sought.

The court overruled the demurrer to the petition, and allowed the exception or demurrer to the answer. Thereupon a jury was empanneled to which the defendant objected, on the ground that the proper parties, as shown in its demurrer, were not before the court, and asked to have the Western Union Telegraph Company made defendant, which was denied. The defendant then "claimed an imparlance, and that in as much as the issues were at this moment presented, after decision on the demurrer and exceptions," &c., defendant claimed time to obtain evidence to contest the allegations of the petitioner, &c., which required evidence from New York on the question of damages. The court, on the ground that the names of the absent witnesses were not stated, nor what they would prove, held the ground for a continuance insufficient, and directed the trial before the jury to proceed. Thereupon the defendant excepted to this, and refused to appear before the jury on the issues of facts, because the necessary parties were not before the court. The petitioner then offered its evidence to the jury, who found a verdict for the petitioner, which declared, among other things, that no damages would be done to the railroad company by granting the prayer of the petition, "wherefore they assess no damages against the petitioner on account of anything prayed for in their said petition." The court thereupon rendered judgment condemning the property to the use of petitioner in accordance with the verdict, and taxing petitioner with all the costs.

The railroad company appeals, and here assigns, among other things, as error: 1st, That the probate court had no

[N. O. M. & T. R. R. Co. *v.* S. & A. T. Co.]
jurisdiction of the subject matter of the petition, or to render any decree granting relief therein ; 2d, That the court erred in refusing the motions for an imparlance and continuance; 3d, That the court erred in not rendering judgment for the defendant *non obstante veredicto* ; 4th, That the court erred in proceeding to a trial without proper parties before it; 5th, That the court erred in overruling appellant's demurrer.

GEORGE N. STEWART, for appellant.*—The statute on which the proceedings was founded, does not give *a trial by jury* on *the allegations of fact* asserted in the complaint.

The constitution expressly requires "that no right of way shall be appropriated to the use of any corporation until full compensation therefor be first made in money, or secured by a deposit of money, irrespective of any improvement proposed by such corporation ; which compensation shall be ascertained by a jury of twelve men, in a court of record as shall be prescribed by law." Art. XIII. sec. 5.

Again, Art. 1, sec. 25, provides for the taking of private property for public use; rights of way over lands of persons or corporations; but it is said, "but just compensation shall in all cases, be first made to the owner."

The statute did require a jury, but their power was confined to one question, and that was "to inquire, and true assessment make of the damages and compensation." (See sec. 7, Act of March 1, 1871. But as to the right of plaintiff to maintain the action, the power of the jury did not extend, and the record shows that on the issue joined, the defendant prayed that proof be required. Sec. 13, article I, of the constitution provides "that the right of trial by jury shall remain inviolate." This objection plainly appears on the face of the record, and there was consequently a want of constitutional power in the probate court to render the judgment it did.

2. Here a right is sought to be established by the decree of a court, in condemnation of the rights of another, and against the will of that other party.

The right of defendant to use the land exclusively, of which it was possessed and invested, being a franchise with improvements made on it, cannot be treated as of no value, nor can the impairing of that right be treated of no value or

---

*The appellant's first brief did not come into the reporter's hands. After the decision he applied for a rehearing, which was denied, and the argument inserted is taken from the application filed in support of the application for rehearing.

detriment to the defendant. In 13 Wallace 268, we find the declaration by Mr. Justice Davis in the case of *Wilmington Railroad* v. *Reid*, that "the franchise of a railroad company is *property,* and property of the most valuable kind, as it cannot be taken even for public use without compensation," and "that it is equally within the protection of the charter," as the road-bed, rolling stock, and depot grounds. To impair *it in part,* is to impair *it.*

The most extraordinary part of the right given by this decree, is not only the right of way, and the use of the way which belonged to the defendants, but the right to use the structures of the defendant for the purpose of the plaintiff, for which there certainly is and can be no warrant in the statute. By this judgment a right is given to fasten the wires of the plaintiff to the bridges and trestle work of the railroad, and they must remain there. When the company, defendant, shall demolish their bridges to build new ones, it is not easy to say what becomes of petitioner's right. Can the defendant tear down the bridge after a compensation has been made, if it is desirable to use its material in another place ?

The statutes under which the proceeding was had were evidently made to condemn rights of way against the owners of the land. Sec. 2, of the act of 1871, says the proceedings shall be *in rem* in respect to such *parcels of land,* and they are to be construed according to the rules of admiralty courts.

The two succeeding acts, do not cure the objections above mentioned.

It is impossible that the defendant should sustain no injury by the judgment of condemnation. The telegraph company may employ whom it will, to attend to its wires along the right of way; the railroad company can not order them off. Thus the railroad company has no control over the men who have the privilege of going on the property and bridges of the company, and virtually loses control over its property; for one worthless or inimical person, taking advantage of his rights, as an employee of the telegraph company, to trespass on the property of the railroad, may inflict untold damage. Besides the right of way is valuable to the telegraph company. To clear out an entirely new right of way would entail large expense upon it. It is a new principle in constitutional law, to say, that when property of great value to the taker, is seized under the right of eminent domain, nothing need be paid by way of "compensation," if it be shown that the owner of the property is unable to put it to advan-

tageous use in that particular business in which the taker in-
tends to use it. The upholding of such verdict does not
give effect to the plain constitutional rights of the de-
fendant.

GAYLORD B. CLARK, with whom was GEORGE W. STONE,
*contra.* Every species of property—franchises as well as cor-
poreal property,is subject to be taken for public use under the
right of eminent domain. Cooley Const. Lim. 526 and note, ci-
ting numerous cases.   17 Ala. 234, case of *Stein* v. *The
Mayor, &c., of Mobile,* Abb. Dig. L. of Corp. p. 318, §§ 41
to 50 *ibid.* p. 324 §§ 92–94; 54 Penn. St. R. 103 ; 1 Redf. on
Railways 257, 39 Ala. 307. The legislature alone can deter-
mine the necessity for the taking.   Cooley C. L. 538.   The
right to take private property for public use may be granted
to private persons or corporations and it makes no difference
that the grantee is a foreign corporation. 24 Barbour 658 ;
39 N. Y. 171. *Railroad Co.* v. *Harris,* 12 Wal. 65.   A tele-
graph is a public improvement and property taken therefor
is taken for a public use.   Scott and Jar. on Tel. § 26.   Al-
lens Tel. Cases 428; 5 Nevada 102.   The right to acquire
property *in invitum* may be conferred expressly or by impli-
cation; general language is sufficient. 7 Foster (N. H.) 183,
4 Cush. 63.   This right is expressly conferred upon appellee
by the act of the general assembly. The necessity of taking
any particular property is committed to the discretion of the
company in whom the right to condemn is vested.   2 N. Y.
595 ; 14 Wis. 609 ; 34 Vt.

It is no objection to the exercise of eminent domain that
lands equally feasible could be purchased.   4 Ohio S. and R.
308.   The word *land* in statutes conferring the rights of em-
inent domain includes right of way, upon the maxium, *omne
magis continet in se minus,* 54 Penn. St. 1. 103.   Statutory
provisions for condemnation of *land* are highly remedial, and
are to be construed liberally and beneficially, and will there-
fore extend to *leaseholds, easements and other interests* in land
as well as to the land itself. 23 Pick. 395 ; 6 Mass. 546 ; 15
Pick. 203.   Having the right conferred by statute, to build
along railroads and the right of way over its lands, fran-
chises and easements, a full and complete constitutional rem-
edy is provided by statute of Ala. 1870-71 p. 55, also pam.
Acts 1872-73 p. 63.

The constiution of Ala. Art. XIII § 5, requires that the
compensation shall be ascertained by a jury of twelve men
in a court of record, and the acts above referred to are made
to conform in every respect thereto.   The machinery is am-

ple for the protection of parties interested in the property condemned. The proceeding is *in rem* and is thus made to conform to the principle upon which the right of eminent domain is based, viz : the right of the sovereign as against the property itself, for the public safety, necessity and convenience. 39 Ala. 307.

It is claimed that these acts conferring jurisdiction on the probate court are void, on the ground that the probate court is a court of limited powers, which are prescribed by the constitution of Alabama Art. VI § 9, and that no additional jurisdiction can be conferred. A different doctrine has been maintained by the courts of this and other states. *Ward* v. *Lewis*, 1 Stew. R. 26 ; *Timms* v. *The State*, 26 Ala. 165 ; *Gaines* v. *Harvin*, 19 Ala. 491 ; *Balkum* v. *The State*, 40 Ala. 671. In the latter case the court says in reference to the constitution of a like clause in the old constitution: "The constitution gives the general assembly the power to establish courts of probate for the granting of letters testamentary, and of administration and for orphans business, but there is no prohibition against conferring upon such courts judicial cognizance of matters which are also within the jurisdition of other courts."

There was no error in rendering judgment of condemnation on the the the verdict, as is claimed in the 3d assignment of error. *Livingston* v. *Mayor, &c.*, 8 Ward. 85. Cooley Const. Lim. 570 ; 2 Cush. 361, 3 Allen 133 ; 23 Conn. 189.

The presumptions are all in favor of the verdict. If no damages were or could have been proved, the jury could not have assessed any. If it is claimed that they should have at least given nominal damages, this court would not reverse the judgment on that account particularly, when the parties intervening never claimed any damages before the jury, and the judgment makes the appellee pay the costs in the proceedings.

The refusal to continue was matter of discretion not reversable on appeal. The present appellant can only complain of error prejudicial to it. If parties are interested who are not before the court, the judgment will not bind them. The proceeding is *in rem*, and the monition being posted on the thing sought to be condemned, addressed to all persons interested therein, besides personal notice served on appellant, binds every party interested in the property. 12 Ala. 118.

MANNING, J.—Lines of communication for the transmission of messages by the electric telegraph, between dis-

[N. O. M. & T. R. R. Co. *v.* S. & A. T. Co.]

tant places, may constitute a work of "public use," according to the law relating to the right of *eminent domain*.

By a statute of this State, approved April 4, 1873, (Acts of 1872–3, No. 86,) "any telegraph company chartered or incorporated by this or any other State, shall have the right to construct, maintain and operate lines of telegraph along any of the railroads, or other public highways in the State of Alabama"—but so "as not to obstruct or hinder the usual travel on such railroad or other highway." Section 2 provides that contracts may be made for a right of way, &c., therefor, with "the owner of any lands, or of any franchise, or easement therein, over which such telegraph line is proposed to be erected." And section 3 enacts "That such telegraph company shall be entitled to the right of way over the lands, franchises and easements of other persons and corporations, and the right to erect poles and establish offices, upon making just compensation as now provided by law."

According to an "act to prescribe the mode of taking private property for railroads, or other purposes, or for public use," approved March 1, 1871, as amended April 4, 1873, (Acts of 1872–3, No. 27), "Whenever any person or corporation of this State, or any telegraph company of another State, and proposing under the laws of this State to extend its lines into or through the same, shall be entitled to acquire, or take any land, or any interest therein, or to have a way, privilege, easement, or right of use, over or upon it—such land, or a franchise or easement therein, belonging to another person, or corporation, * * * application therefor may be made to the probate court, particularly describing the parcel or parcels of land, *or franchise or easement*, over which the way, privilege, easement, or right of use is claimed; which petition must be filed in the probate court of the county in which the lands are situated, or of some county into or through which the right of franchise or easement in such lands extends, if the claim be over or upon a franchise or easement; and the petition must set forth all the use, easement, privilege or other right claimed therein."

Section 2 of the original act (of March 1, 1871), enacts that thereupon the probate court "shall have and take jurisdiction of the subject matter" of the petition; and that the proceeding shall be *in rem*, and conform as nearly as may be, except as therein otherwise provided, to the proceedings *in rem*, in the admiralty courts. And section 3 provides that upon a monition or notice as prescribed, being posted according to directions, "the authority of the court shall be complete to proceed in the cause." Any person having an

interest in the premises may intervene and become a party; and it is directed that in certain circumstances, notice of the proceeding be served on persons concerned as property owners, and an assessment is to be made of the damages and compensation to be paid by the petitioner for the use or privilege which he applies for; which assessment must be made by a jury of twelve men in court. The court is required to speed the cause, (§ 11) and the statute must be liberally construed as a remedial act, (§ 16). And the records of such causes must be in books kept therefor, (§ 12).

Appellee was the petitioner below. The application was for the privilege of erecting and maintaining telegraph poles and wires, and operating a telegraph line along the route of appellant's railroad in Mobile county, over the right of way thereof, describing it, and along its bridges—but so as not to obstruct or hinder the usual travel on the railroad. The petition set forth also a compliance by petitioner with the provisions of the act of Congress of July 24, 1866, in respect to telegraph companies. A copy of the petition was served on the agent at Mobile of the company, and a monition or notice was posted up, according to the directions of the statute. Appellant appeared and filed an answer to the petition and exceptions in the nature of a demurrer thereto. And after argument of questions of law, which were decided against appellant, and moving that the cause be continued. which was refused by the court, and taking exceptions to the rulings of the court, appellant's counsel withdrew from the cause at the time when it was submitted to the jury. Evidence on the part of appellee was introduced, which, among other things, explained how the telegraph line was to be constructed and used, and the effect thereof upon appellant's right of way or other easement or estate in the land. The jury by their verdict found that appellant would not sustain any damage by the construction and maintenance of the telegraph line as proposed; and the court "adjudged and decreed that the petitioner have and possess the uses and easements in the property described in said petition, as therein prayed for," and that petitioner pay the costs of the proceeding.

There was no error for which this court would reverse the decree, in the refusal of the court below to grant a continuance of the cause.

The refusal of the probate court to require petitioner to make the Western Union Telegraph Company a party defendant, is not an error of which this appellant can be heard to complain. That company—if concerned in the cause—

might itself have intervened on its own account. Besides, admitting the existence of the lines of the Western Union Telegraph Company, and a contract between it and the New Orleans, Mobile and Texas R. R. Co., as set forth in appellant's answer, it does not appear that the Western Union Company had any interest in this proceeding to intervene for. The petition does not disclose any intention or claim of right to interfere with the poles, lines or right of way of the Western Union Telegraph Company. Whether the supposed contract between it and the railroad company was valid or not, the probate court had no jurisdiction to determine; nor was it material that it should do so. For, the railroad company itself never had the exclusive privilege of telegraphic communication along its right of way; and if it had it could not by its contract with another corporation, preclude the State in the exercise of its *right of eminent domain,* from authorizing the establishment of petitioner's line also, along the route of its railroad. Cooley on Const. Lim. 525–527, and cases there referred to.

It is not a valid objection to the decree of condemnation in this cause, that the petition does not show that there were owners in fee—apart from appellant—of the lands over which appellant had a right of way for its railroad—and who such other owners were. The act under which these proceedings were had, as amended by No. 27 of the acts of 1872–3, seems to contemplate that action to subject a franchise or easement, to such a privilege or use, as that claimed in this cause, may be taken separately against the owner of such franchise or easement alone. Whether we ought, however, to give such an effect to this statute, we need not now determine. The objection is one which, for defect of interest, appellant has no right to insist upon. And if there be any such owners in fee, whether the United States or private persons, appellee may have already obtained from them, the privilege it sought to obtain by this action against appellant.

It would have been more in harmony with the practice in suits at law, if, when no damage was proved, the jury had been instructed in this cause, to render their verdict for a small specified sum as nominal damages. This practice was adopted in common law courts for conformity with the rule, which became established after the statute of Gloucester (C. Edw. I.) that the party who failed in an action at law should be mulcted in costs. There are many cases in which a party may be entitled to a judgment, although no damage be proved. For instance, where the act done is of such a char-

acter that its repetition or continuance may become the foundation of an adverse right, the law in the absence of any special injury, gives nominal damages, a suit being necessary to preserve title. *Burden* v. *Stein*, 24 Ala., p. 148, and cases cited. Nominal damages are allowed in such cases to entitle the party to costs. But since the statute in this case provides that the petitioner must pay the costs, and it was required to pay them, there is no sensible reason for setting aside a decree and verdict which did not allow merely nominal damages, when no damage was, in fact, sustained. A like verdict and corresponding decree thereon, in a similar case, have been held valid in this court before. *Burden* v. *Stein*, 25 Ala. 455.

The chief contestation, however, in this cause, is founded upon a supposed want of jurisdiction in the court below in cases such as this. It is insisted that under the constitution, power to adjudicate such a controversy cannot be conferred on a probate court.

The constitutional clause referred to, is as follows: "The General Assembly shall have power to establish in each county within the State, a court of probate *with general jurisdiction*, for the granting of letters testamentary and of administration and for orphans' business; *and the General Assembly may confer on the said courts jurisdiction of contracts for labor, and order frequent sessions for that purpose*." The corresponding sections in the former constitutions of the State, did not contain the words: "with general jurisdiction," or the concluding clause. In other respects they were exactly the same, and read as follows: "The General Assembly shall have power to establish in each county within this State a court of probate, for the granting of letters testamentary and of administration and for orphans' business."

On the 14th of December, 1819, a few days after the constitution of that year, containing the section last above quoted, became the law of the land, a statute of that date created tribunals, called "County Courts," in which was vested the authority for "granting letters testamentary and of administration, and for orphans' business." But, instead of limiting their authority to these subjects, it was "*further enacted*, That the said county courts shall, in addition to the jurisdiction heretofore given to the county court and orphans' court in the territorial government, have concurrent jurisdiction in all actions of debt and assumpsit, with the circuit courts, under the limitations prescribed in this act." Laws of Alabama, 189. Other additions were from time to time made to their authority, and, what is very much to the

point, it was enacted in 1835, that "all writs of *ad quod
dammum*, shall be heard and tried by the judge of the county
court at the regular term of the orphans' court," &c., &c.
Clay's Dig. 378, § 13.

After the statute which provided for the election of these
officials, with the title of judges of probate, and which desig-
nated their courts as "courts of probate," the latter were in-
vested with jurisdiction, among other things, of—

"The binding out of apprentices, and all controversies
between master and apprentice :

"The allotment of dower in lands in the cases provided by
law :

"The partition of lands within the counties :

"The change of name of any person," &c., &c.    (Rev.
Code, p. 239).

In fact, the judge of probate is the only important judicial
officer having a court of record of whom each county in the
State has one.    He is always in his county, and is endowed
by the constitution with power to perform judicial functions.
And upon him alone can such matters of a judicial nature as
require to be promptly disposed of, be devolved with the
certainty that they are to be acted on by an officer who is
constitutionally competent and locally accessible.    Much
business, therefore, and that of great variety, has always been
imposed on the judges of probate and probate courts.

All this was well known to the intelligent members of the
Constitutional Convention of 1867.    And no reason has been
assigned why it should desire to overturn a legislative pol-
icy, which had existed, without any complaint against it,
from the first organization of the State as a State to the time
when this convention assembled.    We cannot, therefore, sup-
pose—because the convention of 1867 expressly provided
that the General Assembly might confer on the probate
courts "jurisdiction of contracts for labor, and order frequent
sessions for that purpose"—that it thereby intended to in-
hibit the General Assembly from granting to them any ju-
risdiction of the numerous other subjects, which previously
had been, or thereafter might be committed, almost necessa-
rily, to these convenient county judicatories.    It is more re-
spectful to that body to suppose, what was doubtless true in
fact, that it took so much interest in "contracts for labor," on
behalf of the recently emancipated slaves, as, without im-
pairing the power of the Legislature, to recommend to it, by
the clause under consideration, provision for what the con-
vention probably supposed would be a prompt and cheap ad-
ministration of the laws relating to such contracts.    And we

[Ketchum v. Creagh.]

hold that the sovereign power belonging to the General Assembly, as the Legislature of the State, is not by such mere inference to be restrained from a field of operation, in which it could apparently do no harm, while the judicious exercise of it in some instances would quite certainly be beneficial.

Indeed, not only does the constitution of 1867–8, in our opinion, permit the Legislature to confer the jurisdiction in question, upon the probate courts, but it makes it almost necessary that it should do so. For, by section 5 of article xiii, it requires that the compensation for a right of way, "shall be ascertained by a jury of twelve men, in a court of record, as may be prescribed by law." And no other court of record existing in each county in this State, can have, within the short terms allowed to them for the performance of their duties, time enough to carry to a conclusion the numerous cases that may occasionally arise, for the condemnation of property to the use of a railroad or other corporation; especially if it should become as often it would become, advisable that the jury be taken to the premises to view them.

The objections made on behalf of appellant, to the proceedings in the probate court, are not well founded. And this court does not usually consider any other questions than those passed upon by the court below, and presented by counsel for our determination.

The decree of the probate court is affirmed.