[Mobile & Ohio Railroad Co. v. Postal Telegraph Cable Co.]

# Mobile & Ohio Railroad Co. *v.* Postal Telegraph Cable Co.

120   21
122   252

120   21
129   588

## *Condemnation Proceedings.*

1. *Telegraph company; courts take judicial notice of public telegraph being public improvement.*—Courts take judicial notice that a public telegraph line is a public improvement, for which property may be taken as for a public use ; and a petition by a telegraph company in a condemnation proceedings, in which the company is described as a telegraph company designed for the service of the public and averring facts which show the public character of the telegraph line to be constructed, is not subject to demurrer upon the ground that it fails to show that the proposed condemnation will enure to the benefit of the public.

2. *Same; right of eminent domain; can condemn a part of a right of way of a railroad.*—A telegraph company, in the exercise of the right of eminent domain given to it by the laws of the State, can condemn a right of way within that part of the right of way of a railroad company not in actual use, when the proposed line of telegraph will be so constructed as to produce no material interference with the railroad company's free exercise of its franchise, or with the actual operation of the road.

3. *Same; same; same; sufficiency of petition.*—In a proceeding instituted by a telegraph company to condemn a right of way for the construction of its line within a railroad company's right of way, a petition, which, after designating the particular line of the railroad and describing its right of way as being 100 feet wide, then alleges that the poles of the telegraph line will be placed 30 feet from the outside of the railroad track and 175 feet apart, and at such places as may be agreed upon, so as to prevent any possible interference with any work or use of said railroad, sufficiently describes the right of way proposed to be condemned for the telegraph line ; and it is not necessary to the sufficiency of such petition, that it should designate the exact position to be occupied by the poles, nor the side of the track to be used, nor that lines of telegraph already existing along the railroad's right of way will not be displaced, nor the quantity or specific description of the land which will be taken and occupied by the telegraph line.

4. *Corporation; in absence of verified plea charter need not be proven; when admission of certified copy of charter in evidence error without injury.*—Where, in a suit instituted by by a corporation,

[Mobile & Ohio Railroad Co. v. Postal Telegraph Cable Co.]

the existence of such corporation is not denied by plea verified by affidavit, it is not necessary to the maintenance of the suit that the corporation should prove the existence of its charter. (Code of 1896, § 1803); and, therefore, in such suit, the introduction in evidence of a certified copy of the charter of the corporation, even though improperly certified, if erroneous, would be error without injury.

5. *Telegraph company; proceeding to condemn right of way; sufficiency of judgment of condemnation.*—In a proceeding instituted by a telegraph company to condemn a right of way, where it is shown by the record that after hearing all the allegations of the petition and the legal evidence relating thereto, it was adjudged that the application be granted, and it was ordered that an issue be made up under the direction of the court to ascertain and assess before a jury the amount of damages and the compensation which the defendant was entitled to receive, by reason of the condemnation of the right of way prayed for in the petition, a judgment entry which recites that upon issue being joined between the parties, trial was had before a jury regularly empannelled, and a verdict returned assessing the compensation to be paid the defendant, and that judgment was accordingly entered against the plaintiff for the sum so assessed, is, in all respects, sufficient; and such judgment can not be objected to upon the ground that the court condemned the property without testimony as to the value thereof.

6. *Same; same; measure of damages.*—In a proceeding by a telegraph company to condemn a right of way for the the construction of its line along the right of way of a railroad company, the measure of damages to the railroad company is the amount of the decrease in the value of the use of the right of way for railroad purposes, when it is jointly used for telegraph purposes; and when the part of the right of way sought to be condemned by the telegraph company is not in actual use by the railroad company, and it is shown that the construction of the telegraph line would work no material interference with the railroad company's free exercise of its franchise, the railroad company is entitled to only nominal damages.

APPEAL from the Circuit Court of Mobile.
Heard before the Hon. WILLIAM S. ANDERSON.

This was a proceeding by the appellee, the Postal Telegraph Cable Company, to condemn an easement in its favor for the purpose of constructing and operating a line of telegraph over the right of way of the Mobile & Ohio Railroad Company, and was commenced by a peti-

tion filed by the Postal Telegraph Cable Company, addressed to the judge of the probate court of Mobile county. This petition averred that the petitioner was a corporation duly organized under the laws of the State of New York, for the purpose of owning, constructing, using and maintaining telegraph lines, and the transmission by wires of messages, &c., and that it was its desire and intention to construct, maintain and operate, for the purposes for which it was organized, a connecting line of telegraph wire in this State, along and on the right of way of the Mobile & Ohio Railroad Company, from the city of Mobile, Alabama, to a station on the said railroad known as State Line; that the petitioner had complied with the statutes of the State in reference to foreign corporations doing business in this State; that the Mobile & Ohio Railroad Company was duly incorporated in this State, and was operating a single line of railroad from the city of Mobile, Alabama, to East St. Louis in the State of Illinois; that the right of way secured to it in the State of Alabama was 100 feet in width; that it was the desire of the petitioner to construct, maintain and operate a line of telegraph on, along, and upon the right of way of the said Mobile & Ohio Railroad Company, from the city of Mobile to said station of State Line, and connect therewith a line of telegraph at the time owned and operated by the petitioner. It was then averred that the railroad company holds and owns its right of way through the State as aforesaid, subject to such restrictions, terms and conditions as are imposed by the laws of said State, and that under and by virtue of said laws the petitioner was authorized to construct, maintain and operate its line of telegraph along any of the railroads or other public highways of the State. It was then averred that the petitioner does not seek to acquire a fee to any land included in the right of way of said railroad company, or a right to use it for any other purpose than to erect telegraph poles and suspend wires upon them, and to maintain and repair the same, and to use the structure for telegraph purposes only; that it intends to erect and maintain only one line of poles for such purposes; and that the compensation to be paid for the property sought to be appropriated for the purposes mentioned could not

be agreed upon by the railroad company and the petitioner, although an earnest effort had been made to effect such agreement.

It was then averred in the petition as follows : "The line of telegraph to be constructed by your petitioner will be of the best material, and upon the most improved plan known or in use in this country, with poles twenty-six feet long, and one foot in diameter at the base, and will be erected by being firmly fixed in the ground at a depth of not less than five feet, in such manner as to hold the same firmly in position, and upon such will be attached suitable arms and insulators, and along which will be strung, attached and suspended, at or near the upper end metallic wire of suitable material and of sufficient number to enable your petitioner to properly transmit all intelligence, messages and news, and said poles will be set about 175 feet from each other, and in localities where lines cross the track of said railroad, or where it is necessary to do so, to prevent any possible interference with any work or use of said railroad, its poles will be of such height above the ground as to permit the wires to be suspended so far above any structure or work of said railroad company, or any cars that may be run thereon, as to prevent any interference therewith. The cross arms to be about six feet long, extending the same distance each side of the poles where attached. The said poles will be so erected and said telegraph lines so constructed and maintained as not to obstruct or hinder the usual travel on said railroad, or interfere with the business or use of said railroad company, and so as not to violate any of the provisions of the statutes of this State, said poles will be erected upon the right of way aforesaid, and in the manner aforesaid, at a distance of not less than thirty feet from the outer edge of said railroad track, and in the event said railroad company shall at any time desire to change the locality of its track or to construct new tracks or side tracks, where the same do not now exist, your petitioner hereby consents to remove such poles, to such other point or points on the said railroad right of way adjacent thereto which shall be designated by said railroad company, upon reasonable notice to and at the expense of petitioner. And said petitioner hereby agrees to place its said poles at

such points along and upon said right of way as may be agreed upon by the said defendant and petitioner, and if at any time said railroad company desires to use the earth where any of said poles may be set, or the ground thereon for any purpose, then in such event to remove such pole or poles to such other point or points on said railroad right of way as may be agreed upon by petitioner and the defendant railroad company. That your petitioner will so construct and maintain said line of telegraph as not to obstruct or hinder the usual travel or traffic on said railroad, nor, will it in any manner impede or obstruct the free use of or come in contact with any other line of telegraph wire, erected on said right of way, of said railroad company, for the purpose of telegraphy. That at and on the lands above described, which is necessary for the construction, maintenance and occupance of the line of telegraph of your petitioner, except on the piling, trestle work and bridges of said railroad company, there is no improvement or superstructure, except the filling and embankment of said railway, and that consists of a mere transformation of the surface of the earth into shape and condition to fit it for a railroad bed, and is not at the point where your petitioner intends to set poles and suspend wires. That said lines, when so constructed, will in no way damage or injure the property or any of it of the said railroad company."

After averring that the petitioner was desirous and willing to pay to said railroad company just compensation for the property which it seeks to take, or such damage as would accrue, in consequence of the appropriation sought by the petitioner, the petitioner then prays that an order may be made granting the right to the petitioner to take and appropriate such part of the railroad's right of way as may be necessary to construct its line, and that the amount of damages, if any, and compensation that the petitioners should pay for the use of such part of the right of way be adjudged.

To this petition the respondent filed the following demurrers: "1. Said petition fails to allege any facts showing or tending to show, that the proposed condemnation will inure to the benefit of the public. 2. Said petition fails to aver any facts showing, or tending to show, that the lands or right of way proposed to be con-

[Mobile & Ohio Railroad Co. v. Postal Telegraph Cable Co.]

demned are necessary for the proper construction of petitioner's line of wire and poles. 3. Said petition fails to aver any facts showing the necessity of condemning the right of way of defendant, or the impracticability of securing or condemning other property for its right of way along its proposed route. 4. Said petition fails to aver any facts showing, or tending to show, that the petitiouer has not obtained, or can not obtain, other property for its right of way between the points petitioner desires to reach other than the right of way owned and occupied by defendant. 5. Said petition fails to state what part of the defendant's right of way it seeks to condemn, whether all or a portion of the same outside of the part covered by defendant's tracks. 6. Said petition. fails to state that the line of petitioner proposed to be erected will not take up the lands now occupied by defendant and its assigns for the erection of telegraph poles and lines. 7. Said petition. fails to state upon which side of defendant's track it proposes to erect its said line. 8. Said petition fails to aver in any specific manner what property the petitioner proposes to condemn, or in what part of defendant's line it proposes to locate the property so condemned. 9. Said petition fails to aver specifically the amount of land proposed to be taken, or where the same is located, and avers no facts from which the court or jury could determine the amount of land taken, the location of same, or the fair and reasonable compensation for the same." This demurrer was overruled, to which ruling the respondent duly excepted.

On the same day that the demurrer was overruled, the court rendered a judgment granting the application of the petitioner, and ordering that issue be made up between the parties before a jury to ascertain and assess the amount of damages and compensation which the defendant is entitled to receive, by reason of the condemnation sought. This judgment is copied at length in the opinion. On the following day, the cause was tried before a jury regularly empannelled on issue made up under the direction of the court. On the trial of this issue, the plaintiff offered in evidence a copy of what purported to be a charter of the Postal Telegraph Cable Company, together with a certificate thereto attached.

This certificate was signed by the "Deputy-Secretary of State of the State of New York." The defendant objected to the introduction of the said copy of the charter, on the ground that the certificate thereto attached did not purport to be signed by the Secretary of State of the State of New York. This objection was overruled, the copy of the charter was admitted in evidence, and the defendant duly excepted. Upon this trial there was much evidence introduced on the part of the petitioner, and by the defendant as to the value of the property which would be appropriated by the petitioner in the construction and maintenance of the telegraph line, as prayed for in the petition.

There were many exceptions reserved by the defendant to the rulings of the court upon the evidence, and there were also exceptions reserved by the defendant to the giving of the charges requested by the petitioner and the refusal to give the charges requested by the defendant; but under the opinion on the present appeal, it is unnecessary to set out at length the facts pertaining to these rulings upon the evidence, or to copy the charges requested.

There were verdict and judgment, assessing defendant's compensation at fifty dollars. The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

E. L. RUSSELL, J. M. FALKNER, RAY RUSHTON and GEORGE H. FEARONS, for appellant.—The allegation of the petition that the Postal Telegraph Cable Company was organized and chartered for the purpose of owning wires, &c., and transmitting messages for a compensation, is not the equivalent of an allegation that it serves the public. Unless petitioner is engaged in the business of serving the public, the high prerogative of Eminent Domain is not transmitted by the State to it. Land cannot be condemned except upon the condition that the public necessity, convenience or welfare require the appropriation.—6 Amer. & Eng. Encyc. of Law, 515, note 3 ; 7 Amer. & Eng. Encyc. of Plead. & Prac., 466–7.

No reasonable necessity was shown for taking the right of way of the defendant and giving it to the petitioner. "Such reasonable necessity is dependent upon

the practicability and cost of another route."—*M. & G. R. R. Co. v. A. M. R. Co.*, 87 Ala. 501; *A. & C. R. R. Co. v. Jacksonville, G. & A. R. R. Co.*, 82 Ala. 297.

In the petition there is no accurate description of the property sought to be condemned. "The petition must describe the land sought to be condemned, with the same certainty and precision as in a conveyance, so that a surveyor could locate it."—*London v. Sample Lumber Co.*, 91 Ala. 606; 7 Amer. & Eng. Encyc. Plead. & Prac., 520. The court below, without any proof whatever of a great many of the material allegations of the petition, and without a particle of testimony as to the value of the property, entered up an order condemning the property. This order if not appealed from would have the effect of taking the property from the defendant and vesting the same in petitioner, without making any provisions for compensation. Such a proceeding is a taking of property without due process of law. The fact that the same order makes up an issue for the assessment of the compensation and that there was a subsequent judgment of the court that the defendant have and recover, of petitioner, the amount of the verdict, is no palliation of such a high-handed proceeding as this. The $50.00 may or may not be paid, still all title of defendant is invested in petitioner simply upon the presentation of its petition, the introduction of what purported to be its charter, without legal proof that it was the charter, proof of appointment of an agent with a known place of business, and proof of the acceptance of the provisions of the act of Congress. This act of Congress was for the purpose of preventing monopolies to one telegraph company or the exclusion of another from the State, but does not give the telegraph company accepting the provisions of the act of Congress the right to take private property without purchase or condemnation. Judge WALLACE, in case of *W. U. Tel. Co. v. B. & O. Tel. Co.*, 19 Fed. Rep. 660, in commenting on the case of *Pensacola Tel. Co. v. W. U. Tel. Co.*, 96 U. S. 1, said: "It was not held in that case that a telegraph company could acquire a right of way over the railroad without the consent of the owner, or even that the act gave to telegraph companies the power to acquire such rights of way by compulsory proceedings upon due compensation," &c.

[Mobile & Ohio Railroad Co. v. Postal Telegraph Cable Co.]

See also *A. & P. Tel. Co. v. Chicago, R. I. & P. R. R. Co.*, 6 Biss. 158 ; *W. U. T. Co. v. Amer. N. Tel. Co.*, 9 Biss. 72. This applies to sections 1652, 1653, and 1654 of the Code of 1886, and it is only by virtue of section 3219 that this proceeding could be maintained.—*Postal Tel. Cable Co. v. Morgan's L. & T. R. R. & S. S. Co.*, 21 So. Rep. 183.. The judgment condemning the property should not have been· absolute, but should have been conditional upon the petitioner's paying the compensation.—6 Amer. & Eng. Encyc. of Law, 627 and notes.

J. R. McIntosh, *contra.*—The objection to the first ground of demurrer, is predicated upon the fact that the petition does not, *in haec verba,* aver that petitioner is engaged in the business of serving the public.—6 Amer. & Eng. Encyc. of Law, 515, note 3 ; 7 Amer. & Eng. Encyc. Plead. & Prac., 166-7. The authorities cited simply announce the undisputed principle, that the power of eminent domain can be asserted only where the property taken is for a public use. The use of land by a telegraph company is a public use ; the transmission of intelligence by electricity being a business of a public character, the legislature may grant to such company the privilege of exercising the power of eminent domain. Telegraph lines are entitled to the same privilege for condemning lands as railroads and similar corporations.—Scott & Jernigan on Telegraphs, § 26 ; Mills on Eminent Domain, § 14. "All improvements that may be made, if useful to the public, may be encouraged by the exercise of eminent domain." Mills on Em. Dom., § 21. A telegraph or telephone line designed for the service of the public and subject to regulations by the legislature, is a public use for which property may be taken.—Lewis on Eminent Domain, § 172, citing *N. O. &c. R. R. Co. v. S. O. & Atl. Tel. Co.*, 53 Ala. 211.

The necessity of taking any particular property is committed to the discretion of the company in whom the right to condemn is invested.—*Ford v. C. & N. W. R. R. Co.*, 14 Wis. 609. It is no objection to the exercise of eminent domain that lands equally feasible could be purchased.—4 Ohio 308. "Land already taken by the exercise of eminent domain for public use and actually

[Mobile & Ohio Railroad Co. v. Postal Telegraph Cable Co.]

used for that purpose,. may be taken by legislative authority for other public uses. When so taken, it is presumed that the former use has ceased, or become detrimental, or relatively of less importance, or that the second is not inconsistent with or detrimental to the former use. * * * * A right of way for a telegraph company may be condemned along a railroad track."— Mills on Eminent Domain, § 45 ; *Lehigh C. & N. Co.. v. Cen. R. R. Co.*, 11 N. J. Eq. 175 ; *Talbot v. Hudson*, 16 Gray 417 ; *Peoria &c. R. Co. v. Peoria &c. R. Co.*, 105 Ill. 110 ; *Wood v. R. R. Co.*, 68 Ga. 539 ; *Railway Co. v. Railway Co.*, 112 Ill. 589 ; *Lake S. &c. Co. v. R. R. Co.*, 97 Ill. 506 ; *C. &c. R. R. Co. v. Ill. Cen. R. R. Co.*, 113 Ill. 156 ; *Barber v. Andover*, 8 N. H. 398 ; *East R. R. Co. v. R. R. Co.*, 111 Mass. 125 ; *N. C. &c. R. R. Co. v. R. R. Co.*, 83 N. C. 489.

There was a sufficient description in the petition of the property sought to be condemned, and the demurrer raising this objection was properly overruled.—Code of 1886, § 3208 ; Lewis on Eminent Domain,. § 350 ; *Railroad Co. v. Telegraph Co.*, 53 Ala. 213 ; *Railroad Co. v. Chicago*, 149 Ill. 457 ; s. c. 166 U. S. 248 ; *Lockie v. Telegraph Co.*, 103 Ill. 402.

The railroad company was entitled to only nominal damages. Just compensation must, of course be paid by the telegraph company for the right of the privilege which it seeks to obtain. "Just compensation," as used in the constitution and statutes, "means a fair and full equivalent for the loss sustained by the taking." Lewis on Eminent Domain, § 462 ; *Bigelow v. Railroad Co.*, 27 Wis. 478. A telegraph line is no material interference with use for railroad purposes.—Lewis on Eminent Domain, § 269 ; *N. O. &c. R. R. Co. v. So. & Atl. Tel. Co.*, 53 Ala. 211 ; *W. U. Tel. Co. v. Am. Un. Tel. Co.*, 65 Ga. 160 ; *B. & O. Tel. Co. v. Morgan's L. & T. R. R. Co.*, 37 La. Ann. 883. Therefore, nominal damages is just compensation in such cases, for the railroad company is entitled to only nominal damages, for the reason it sustains no loss by reason of the construction of the telegraph line in the manner set out in the petition.—*C. & A. R. R. Co. v. J. L. & A. Co.*, 105 Ill. 388 ; *P. & P. U. R. R. Co. v. P. & F. R. R. Co.*, 105 Ill. 110 ; *M. & O. R. R. Co. v. Postal Tel. Cable Co.*, Tenn. Sup.

[Mobile & Ohio Railroad Co. v. Postal Telegraph Cable Co ]

Ct. (Mss) ; *M. & O. R. R. Co. v. Postal Tel. Cable Co.,* Sup. Ct. Ill. (Mss) ; *Boom Co. v. Patterson,* 98 U. S. 403 ; *Stebbing v. Met. Board of Works,* 6 Q. B. 40 *et seq.* ; *Allen v. Boston,* 137 Mass. 319 ; *Tobey v. Taunton,* 119 Mass. 404 ; *Chicago, &c., R. Co. v. Cath. Bishop,* 119 Ill. 525 ; Mills on Eminent Domain, § 159 ; *Union Depot &c. Co. v. Brunswick,* 31 Minn. 297 ; *Sullivan v. LaFayette Co.,* 61 Miss. 271 ; Lewis on Eminent Domain, § 269.

HARALSON, J.—This case is an appeal from the circuit court, to review the proceedings of that court in the trial of the cause on appeal from the probate court, where they were instituted, for the condemnation of an easement in favor of the appellee company, to construct and operate its line of telegraph over the right of way of appellant company. The case is here on appeal by the railroad company, but the real party in interest, as reasonably appears from the proceedings, is the Western Union Telegraph Company, with which the railroad company has a contract for an exclusive line over its right of way ; and under its contract, said telegraph company may use the name of the railroad company, to resist the attempt of any other line, to construct on the right of way of the railroad any competing telegraph line.

1. The first ground of demurrer is without merit. We all know that a telegraph line such as that proposed in the petition to be extended is a public improvement, and that property proposed to be taken therefor is for a public use.—Scott & Jer. on Tel., § 26 ; Mills on Em. Dom., § § 14 a, 21 ; Lewis on Em. Dom., § 172. The constitution and statutes of this State recognize this fact.—Const. Art. XIV, § 11 ; Code, 1886, § § 1434, 1652, 1654, 3219. Moreover, the petition, sufficient without the averment to show the public character of the telegraph line, states in terms that it "is a public work or improvement."

2. The 2d, 3d and 4th grounds, in setting up that the petition fails to aver facts showing or tending to show that the right of way proposed to be condemned is necessary for the proper construction of petitioner's line of wire and poles, are also not well assigned. The petition makes a very clear case for the application of the rights

conferred by statute for the condemnation of this right of way. The authorities referred to to sustain these grounds of demurrer (*M. & G. R. Co. v. A. M. R. Co.*, 87 Ala. 501; *Anniston & C. R. R. Co. v. Jacksonville, G. & A. R. R. Co.*, 82 Ala. 297) are not in point. It is averred in the petition that the proposed line of telegraph will be constructed in a manner, fully stated, so as "to prevent any possible interference with any work or use of said railroad." It is proposed to so construct the line, that it will not produce any material interference with the free exercise of the franchise of the railroad company, nor extend to that part of its right of way which is in actual use. Common knowledge teaches, that there is ample space on the 100 feet of the railroad's right of way, for two or more telegraph lines, without obstructing the free and ample use for railroad purposes.

3. The remaining grounds of demurrer,—5, 6, 7, 8 and 9,—are that there is no sufficient description given in the petition of the right of way proposed to be condemned. These grounds contradict the very full and definite allegations of the petition. It is difficult to conceive how ampler and fairer averments of what is proposed to be done by petitioner in establishing its line could have been made. The defendant on these averments,—as it was furnished with sufficient data to do,— entered into a minute calculation by its witnesses of the number of feet of land that would be occupied by petitioner in the erection of its poles throughout the whole length of the line. The exact spots where the poles would be placed, and whether on the one side or the other of the road-bed, as necessities and conveniences of the railroad might be best subserved, could not, of course, be definitely stated, nor was it necessary to do so. The same objection was raised against a similar petition in the case of the *N. O., M. & T. R. R. Co. v. S. & A. T. Co.*, 53 Ala. 211; and was held not to be well founded. It would seem after this, that there was no ground for complaint for want of information as to what part and how much of defendant's right of way would be necessary for the establishment of the line of the telegraph company.

4. Whether the charter of the plaintiff company, purporting to be certified by the "Deputy Secretary of

[Mobile & Ohio Railroad Co. v. Postal Telegraph Cable Co.]

State" of New York, was, under our statute, admissible in evidence, without further proof, we need not decide. The petitioner was not required to prove the existence of its charter, unless the same was denied by plea verified by affidavit. No such plea was interposed.—Acts, 1888–89, p. 57; Code, § 1803; *Smith v. Hiles-Carver Co.*, 107 Ala. 272.

5. The 11th assignment of error is, "that the court erred in entering up an order condemning the property." The contention of appellant as to this alleged error is, as stated in brief of counsel, that "the court below, without any proof whatever of a great many of the material allegations of the petition, and without a particle of testimony as to the value of the property, entered up an order condemning the property."

This objection seems to be in contradiction of the recitals of the record. On the 26th day of January, 1898, the judgment of condemnation was rendered in the cause as follows : "This cause coming on to be heard upon the application of the plaintiff to condemn the right of way set out in petition, in this cause, and upon hearing all the allegations of the petition and the legal evidence touching the same, it is ordered and adjudged by the court that said application be and the same is hereby granted. It is further ordered that an issue be and the same is hereby made up under the direction of the court, to ascertain and assess before a jury the amount of damages and compensation which the defendant is entitled to receive by reason of the condemnation of the right of way prayed for in the petition in said cause." On the day following, the 27th day of January, 1898, the record further recites, the parties came and an issue was made up, and a trial was had before a jury regularly impannelled for the purpose, and after hearing the evidence, under the charge of the court, rendered their verdict, assessing the compensation to be paid defendant at the sum of $50, and judgment was entered against the plaintiff for that sum, and for all the costs of the proceeding.

No complaint has been, or can be, made by the appellant of this judgment; that it was entered against the plaintiff below for the damages assessed. It may be well to suggest, that the statute does not seem to provide for

a personal judgment against a plaintiff in such a case, for the compensation assessed to be paid by him to the defendant, but merely for a decree or order of condemnation "upon the payment of the damages and compensation so assessed and reported, or the deposit of the same in court."—Code of 1896, §§ 1719 (3212)-1721 (3216). Section 1722 (3218) of Code of 1896, provides within what time the plaintiff may make such payment or deposit, and further, that if he fails to pay the same within such time, the assessment shall cease to be binding on the owner of the land, and the rights of the applicant shall determine thereunder, etc. There was no legal obligation on the petitioner to accept the condemnation on the compensation assessed, but it was at liberty to abandon the same.

6. The railroad company, as has been well decided, would not be entitled to an increased value on account of proposed improvements or uses, if any, in contemplation of being made on the right of way. Possible, probable or imaginary uses are to be excluded. Such uses would be remote and speculative. Assessments should be of the value at the time of taking, having regard to the existing business and wants of the community, or such as may be reasonably expected in the immediate future.—Mills on Em. Dom., §§ 173, 174, and authorities there cited; Lewis on Em. Dom., § 480; Pierce on Railroads, p. 217; *C. B. & Q. R. R. Co. v. Chicago,* 149 Ill. 457; *Jones v. N. O. & S. R. R. Co.,* 70 Ala. 233. The plaintiff, in its petition, proposed a condemnation for its uses, such as would not obstruct or hinder the railroad company in its business, or in its use of said right of way; that it would erect its poles, twenty-six feet long, above the ground, at a distance of not less than thirty feet from the outer edge of said railroad track; and in the event that said company should at any time desire to change the locality of its track, or to construct new tracks or side tracks, where the same do not now exist, the plaintiff would remove its poles at its own expense, to any other point on the said right of way as might be agreed on between defendant and plaintiff.

In *Jones v. N. O. & S. R. R. Co.,* 70 Ala. 227, a proceeding for the condemnation of a right of way of a railroad company, it was said, as to the proper measure of

[Mobile & Ohio Railroad Co. v. Postal Telegraph Cable Co.]

damages : "The value of the land when taken, before the construction of the road, and before any injury to the land taken resulting from construction, and the injury, the diminution in value of the contiguous lands, is the true and just measure of compensation.—*Lyon v. G. B. & M. R. R. Co.*, 42 Wis. 538." That was a case where a certain well defined quantity in a strip of land running through another's premises was taken for the right of way of a railroad company. In such cases, the market value of the land enters necessarily into the estimate of compensation. In the case before us, a very nominal amount of the land constituting right of way is proposed to be taken,—only that part of it occupied by the posts, one hundred and seventy-five feet apart, leaving the way for all other purposes unobstructed. It is really an easement in an easement, a servitude, true, for which the company is entitled to some compensation under the constitution. The railroad company, however, holds its right of way so far as is made to appear simply for railroad purposes, and is restricted in its use of the same for such purposes. Under this view of the estate that the railroad company has in its right of way, it is difficult to see how the damages sustained by the road can be anything more than nominal. Indeed, if we might weigh advantages and disadvantages, a competing line would naturally and reasonably appear to be an advantage to the railroad company.

To prevent any misconstruction, it is well to say, we are not passing upon any rights of the company, or others, not presented in this record, such as the interest of a company in lands to which it holds a fee simple title by purchase such as by its charter it may have authority to own ; nor the rights of the holders of contiguous lands, owning the fee in the lands over which the railroad has its right of way ; nor the question of damages, when a railroad company has built a bridge over a stream and a telegraph company seeks to use the superstructure as a support for its fastenings and wires. Such questions are in no wise involved in this case, and are not before us.

It has not been shown that the company holds the land, as a private individual, to devote it to any purpose it pleases, or to sell it at will at the highest price it will

bring on the market. The land constituting the right of way really has no market value, so long as it is used for such purpose. It has been withdrawn, by the very uses of the company, from marketable lands; and when there can be no market value of land by reason of its use as a part of an extensive business or enterprise, its value must be determined by the use to which it is applied, and necessarily not by any supposed market value it has.—*I. C. R. R. Co. v. City of Chicago*, 141 Ill. 509; *C. B. & Q. R. Co. v. City of Chicago*, 149 Ill. 457; *C. B. & Q. R. Co. v. City of Chicago*, 166 U. S. 226; Lewis on Em. Dom., § 485. Commenting upon the decision in the Illinois case last cited,—which was a case for the extension of a street across railroad tracks or . right of way,—the Supreme Court of the United States, in the case last cited, used language well adapted to the case in hand. They say: "The land as such was not taken, the railroad company was not prevented from using it, and its use for all the purposes for which it was held by the railroad company was interfered with, only so far as its *exclusive* enjoyment for the purpose of railroad tracks was diminished in value by subjecting the land within the crossing to public use as a street. The Supreme Court of Illinois well said 'that the measure of compensation is the amount of decrease in the value of the use for railroad purposes caused by the use for purposes of a street; such use of a street being exercised jointly with the use of the companies for railroad purposes. In other words, the company is to be compensated for the diminution in its right to use its tracks caused by the existence and use of the street.' " The Supreme Court of Illinois held in that case, that the trial court did not err in excluding evidence to show the general salable value of the land constituting the right of way included in the crossing, or its general value for other uses than that to which it was applied. The soundness of this principle was approved by the Federal Court, and it appears to be sustained by reason and authority.—149 Ill. 457; 166 U. S. 249; *Mobile & O. R. R. Co. v. Postal Tel. Cable Co.* Supt. Ct. of Tenn. Apr. Term, 1898, in MS.,—two cases tried and decided together; *St. L. & C. R. R. Co. v. Postal Tel. Co.*, 173 Ill. 508.

[Mobile & Ohio Railroad Co. v. Postal Telegraph Cable Co.]

The cases referred to from the Tennessee court, recently decided, were between the same parties as here ; the petition in each case, as appears, was identical in substance with the one in this case, and the main question as here presented,—that of damages to be allowed,—was there decided.

One of those cases, from the county of Madison, was heard on appeal from the report of the jury of inquiry before the judge without a jury, and the other from the county of Gibson, from the judgment on verdict of a jury.   In the first, the trial judge held that the measure of damages to the defendant was the amount of decrease in the value of the use of the right of way for railroad purposes, when it was jointly used for telegraph purposes, and that nothing but nominal damages could be had ; and in the other, the judge charged the jury that they could give as damages nothing except the value of the land occupied as post holes by the telegraph company, which was assessed at $12.50.

The court affirmed the decision of the lower court in each case, on the ground that the railroad company was entitled to no more than nominal damages.   In the last,—the Gibson county case,—they held, that the damages of $12.50 were assessed upon the wrong basis,—the value of the land occupied by the post holes of the telegraph company,—but as they were nominal, and not complained of, the case would not be reversed for the error.

The views announced by us in the foregoing opinion, find full support in these Tennessee cases.   In the case before us, the jury assessed the damages against the telegraph company at $50.00.

We deem it unnecessary to review the assignments of error on the admission and rejection of evidence, and on the charges given and refused.   Holding as we do, that the defendant company was entitled to nominal damages only, and if in anything error may have intervened, it was error without injury.

Affirmed.